OPINION
Defendant-appellant Lloyd A. Justice, Sr. appeals his convictions and sentences entered by the Fairfield County Municipal Court, on one count of domestic violence, in violation of R.C. 2919.25, and one count of violating a temporary protection order, in violation of R.C. 2919.27, following a jury's verdict of guilty on both charges. Plaintiff-appellee is the State of Ohio.
STATEMENT OF THE FACTS AND CASE
On March 3, 2000, appellant was charged with domestic violence, in violation of R.C. 2919.25(A). The charge resulted from an incident on March 2, 2000, involving appellant's son, Kevin.[1] Appellant entered a plea of not guilty at his arraignment. On March 6, 2000, the trial court issued a temporary protection order.
On June 14, 2000, appellant was charged with violating a temporary protection order relative to Ruth Justice, appellant's former wife.[2]
The order, which was issued in August, 1999, specifically stated appellant "shall not abuse [Ruth Justice] by * * * bothering, harassing, annoying, contacting * * *." The June 14, 2000 charge was filed after appellant contacted Ruth via telephone on that same day. Ruth tape recorded this conversation. At his arraignment on July 7, 2000, appellant entered a plea of not guilty to the offense, and specifically requested his case be tried within the time provided by law.
On September 7, 2000, appellant filed a motion to consolidate the domestic violence and TPO violation cases, and a motion for a continuance of those two cases as well as four other pending criminal actions against appellant. The motion expressly stated, "Mr. Justice hereby waives his speedy trial rights in all cases." September 7, 2000 Motion for Continuance at 3, unpaginated. The domestic violence and TPO cases proceeded to jury trial on February 27, 2001. The following facts, which are relevant to the instant appeal, were adduced at trial.
Kevin Justice testified he was sitting in the living room of appellant's home during the evening of March 2, 2000. Shortly after 11:00 p.m., appellant and Lloyd Justice, Jr. arrived at the residence. According to Kevin, an argument ensued between appellant and him after he "ran [his] mouth a little bit." Appellant walked over to Kevin and smacked him open-handed across the face. Appellant returned to his chair. Appellant and Kevin continued to exchange words. Kevin recalled appellant approached him and punched him in the face. Kevin's sustained a black eye as a result. Appellant wrestled Kevin onto the floor. Kevin recalled Lloyd, Jr., who had just returned from the kitchen, asked Kevin why he started the whole thing. Thereafter, Lloyd, Jr. placed Kevin in a choke hold and pushed appellant off of Kevin. Appellant then instructed Lloyd, Jr. to call their mother or sister. Kevin walked outside to the end of the driveway and waited for his sister, Melissa, to arrive. Melissa observed Kevin's black eye, and asked her brother what happened. After Kevin informed Melissa appellant had struck him, Melissa drove Kevin to the Sheriff's Department. Kevin testified appellant rarely used physical discipline on him and appellant was drunk that evening.
Lloyd, Jr. testified on appellant's behalf. Lloyd, Jr. recalled on the evening of March 2, 2000, he was joking with Kevin, who became upset. Kevin jumped up and yelled obscenities at Lloyd, Jr. An argument ensued between the brothers. Appellant entered the living room and instructed the boys to be quiet. Appellant then asked Kevin to do a chore, but Kevin refused. Appellant and Lloyd, Jr. "got on [Kevin's] case." Tr. Vol. II at 262. Kevin advanced toward Lloyd, Jr. The boys fought, and appellant attempted to break them up. Lloyd, Jr. testified he was not injured during the scuffle. Kevin proceeded to his bedroom and informed his brother and appellant he was leaving the house. Lloyd, Jr. called his mother and told her to come get Kevin. Lloyd, Jr. recalled the entire altercation lasted approximately five minutes.
With respect to the TPO violation, Melissa Justice, Kevin Justice, Ruth Justice, and Marcie Morris, Ruth's neighbor, testified regarding an incident on the evening of August 7, 1999. On that evening, appellant hung out the passenger side window of his white pick-up truck, which Lloyd, Jr. was driving, and threatened Ruth and Melissa Justice. As a result, domestic violence charges were filed against appellant and temporary protection orders were issued for Ruth and Melissa Justice. On June 14, 2000, Ruth Justice had telephone contact with appellant. Ruth Justice tape recorded this conversation. She testified she never contacted appellant by telephone, but he called her residence on a continual basis.
After hearing all the evidence and deliberations, the jury found appellant guilty of domestic violence and violation of temporary protection order. The trial court sentenced appellant to a period of 180 days in county jail for the domestic violence conviction, but suspended 150 days of the sentence, and placed appellant on probation with conditions. The trial court also imposed a $250 fine plus court costs. Trial court sentenced appellant to 180 days in the county jail for the TPO violation, but suspended the entire sentence, and placed appellant on probation for a period of three years. The trial court likewise imposed a $250 fine upon appellant plus court costs.
It is from these convictions and sentences appellant appeals, raising the following assignments of error:
 THE TRIAL COURT COMMITTED ERROR WHEN IT OVERRULED THE DEFENDANT'S MOTION TO DISCHARGE THE DEFENDANT FOR A DELAY IN TRIAL PURSUANT TO R.C. 2945.73 IN CASE NO. 00CRB1010.
 THE EVIDENCE WAS SUCH THAT REASONABLE MINDS COULD NOT CONCLUDE THAT EITHER CHARGED OFFENSES HAS BEEN PROVEN BEYOND A REASONABLE DOUBT THUS THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 THE TRIAL COURT DEMONSTRATED A BIAS AGAINST THE DEFENDANT THAT AMOUNTED TO ANIMUS THAT DENIED THE DEFENDANT A FAIR TRIAL.
 I
In his first assignment of error, appellant maintains the trial court erred in overruling his R.C. 2945.73 motion to dismiss the TPO violation case. Appellant argues, although he waived his speedy trial rights in other pending matters, he never waived time in the TPO violation case. A review of the record belies such an assertion.
On September 7, 2000, appellant filed a motion to consolidate, and a motion for continuance. The motion to consolidate requested the trial court consolidate six pending criminal matters against appellant, including the TPO violation case. The motion for continuance requested the trial court continue the bench trial scheduled for September 22, 2000, in the six pending criminal actions against appellant, including the TPO violation case. In the motion, appellant specifically states he "hereby waives his speedy trial rights in all cases." We note defense counsel has the power to waive his client's right to a speedy trial.[3]
Appellant's trial counsel requested the continuance in order for appellant to undergo a competency evaluation. We find such request was reasonable and the waiver was valid.
Appellant's first assignment of error is overruled.
 II
Herein, appellant raises manifest weight of the evidence claims. With respect to the domestic violence case, appellant submits the State failed to prove beyond a reasonable doubt he committed domestic violence against his son, Kevin. Regarding the TPO violation case, appellant contends the evidence establishes Ruth Justice initiated the conversation with appellant on June 14, 2000; therefore, appellant did not violate the TPO.On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Kevin Justice testified appellant smacked him across the face because Kevin "mouthed off." After additional words were exchanged, appellant punched Kevin in the face, blackening his eye. Contrary to Kevin's testimony, Lloyd Justice, Jr. testified he and Kevin were fighting, and appellant was merely attempting to break up their scuffle. Although appellant maintains Lloyd, Jr.'s version of the events of March 2, 2000, were more credible than Kevin's version, we note a jury as the trier of fact is free to accept or reject any or all the testimony of the witnesses and assess the credibility of those witnesses. Kevin's testimony contains sufficient evidence from which the jury could find appellant guilty of domestic violence.
We now turn to appellant's contention his conviction for violation of a protection order was against the manifest weight of the evidence. The record reveals two temporary protection orders were issued against appellant on August 11, 1999. The orders specifically prohibited appellant from contacting his wife and daughter. On June 14, 2000, appellant and Ruth Justice engaged in a telephone conversation. Ruth Justice tape recorded the conversation. The transcript of the conversation was admitted as State's Exhibit C. The transcription begins with the note, "Conversation already in progress." The conversation proceeds:
Female That's what I, was it you that just called?
Male Yeah
Female Oh.
 Male Every time I tried to call I hear, a like a recording (INAUD).
Female Um, well what do you want?
 Male What do you mean what do I want? I was suppose to call wasn't I?
Female Um not that I know of.
 Male I told um, um, didn't you get my message last night?
Female Uh, from who?
 Male From Kevin. I called and he said you was out of town or something.
Tr. of Statement at 1.
Ruth Justice identified the female voice as her own voice, and the male voice as that of appellant. A review of the initial exchange between appellant and Ruth provides sufficient evidence from which the jury could conclude appellant initiated the telephone call on June 14, 2000, thereby, violating the August 11, 1999 TPO.
Appellant's second assignment of error is overruled.
 III
In his final assignment of error, appellant argues he was denied a fair trial because the trial court demonstrated a bias, which amounted to animus, toward appellant. Appellant refers to six specific statements by the trial court in support of his position. Those are as follows:
 1). And when he is Dr. Jekyll and when he is Mr. Hyde, all of which are perhaps different points of time. I don't believe any person who, uh, would have been worried about a particular incident would have thereafter gone around or engaged in activity with regard to, uh, any personal contact one way or the other and so I think, uh, this, there's a, I don't think a jury would, would have any basis to find that Ruth was, that felt fearful or should have felt fearful reasonably based on her history with the defendant. So, it will be granted, it will be denied with regard to Melissa; it will be granted with regard to Ruth, uh, which would be case number 99-CRB-1529.
 That would lead, uh, a domestic violence case with Kevin to the jury, uh, the violation of TPO, uh, to the jury and Melissa's domestic menacing to the jury. And actually, in listening to all the evidence, I'm relatively surprised that the ideal charge in this particular case obviously would be stalking. It wasn't filed? It would have been an easy one to make, but it's not, we don't have it so, here we go.
 The instructions on a stalking trial are real simple. Even not just contact, which is pretty well stipulated here, is the basis for a stalking charge. Okay?
Tr. Vol. II at 200, I. 7-25.
* * *
 2). I haven't heard her say anything to keep Lloyd out of trouble. I'm wondering what the heck she's doing here.
Tr. Vol. III at 209, I. 8-9.
* * *
 3). A. Oh yeah. And that boy there, I don't care if he's tied up or what, he manages to check on me every day, if he has to call me or come around. (Pause) All my children's like that though; they call and check on me.
 THE COURT: Great. Any other questions? No? Any follow-up questions?
PROS. GRIGGS: No. your Honor, thank you.
ATTY. ORT: No, your Honor.
THE COURT: Thank you for coming, Mrs. Justice.
A. Well, thanks a lot.
THE COURT: Next?
ATTY. ORT: Lloyd, Jr.
THE COURT: You've got 15 minutes.
Tr. Vol. II at 254, I.
 4). THE COURT: Oh, yeah. Mr. Clark, you get to stay with me. Here's what happens, lucky guy that you are. (Laughter) If something would happen to one of the jurors during their short deliberation, my daughter has her science fair project at 7:00. Oh, don't take that into consideration * * *
Tr. Vol. II at 317, I. 10-14.
 5). And this, this was a difficult task. I'll tell you, in Pickaway County I've had a lot of domestic violence cases, uh, that I thought were pretty good fundamental case and the jury has returned each and every one of those a not guilty finding simply because, uh, notwithstanding but what they're told, but often times they feel compelled that people should resolve these kind of things through some civil remedy, through some counseling, whatever the case may be and, uh, certainly this case was, uh, it's difficult because it's, fortunately for this family, it's a fairly dysfunctional family. So I don't know if that' even an alternate.
Tr. Vol. II at 318, I. 9-18.
 6). I think that was pretty clear. Actually what wasn't charged in the complaint, which I thought was fairly well established by the evidence, was one of the things that protection orders don't allow is stalking, continuing nuisance-type stuff that goes on, uh, wasn't charged in the complaint in that particular case, but there was a lot of testimony about stalking going on.
Tr. Vol. II 319, I. 20-25.
Read in isolation as presented by appellant, we find the trial court's comments to be innocuous and do not rise to a level of bias or animus. Read in context with the surrounding record, we find these comments fail to affirmatively demonstrate bias or animus toward appellant. We note a number of the comments were made outside the presence of the jury.
Appellant's third assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Fairfield County Municipal Court is affirmed. Costs assessed to appellant.
Hon. W. Scott Gwin, P.J., Hon. William B. Hoffman, J. and Hon. John F. Boggins, J. concur.
[1] Fairfield County Municipal Court Case No. 00CRB00320 (hereinafter "domestic violence case").
[2] Fairfield County Municipal Court Case No. 00CRB1010 (hereinafter "TPO case").
[3] State v. Jones (Dec. 22, 1994), Franklin App. No. 94APA04-457, unreported.